RANDOLPH, Adm'r, vs. WARD and others.

1. PRACTICE IN CIRCUIT COURTS: *On appeals from the probate court.*
Under the provisions of the code, as amended in 1871, causes taken to the circuit court on appeal from the probate court should be tried *de novo.*

2. CLAIMS AGAINST ESTATES: *Exhibition of.*
The failure to furnish an administrator with a copy of a claim exhib-

ited is matter in abatement. And where no copy is demanded, or the refusal to act on the claim is not expressly based on such omission in time for it to have been remedied, this court has never encouraged such objections.

3. — *Waiver of notice by administrator.*

When a claim is presented to an administrator within the time required by law, and a waiver of notice indorsed thereon, it is tantamount to a rejection and reference of it to the probate court.

4. STATUTE OF NONCLAIMS: *What will arrest.*

The exhibition of a claim properly authenticated to an administrator, arrests the statute of nonclaims; and the law does not limit the time of presentment to the probate court for classification.

5. LIMITATION ON JUDGMENT LIENS: *Suspended by the war.*

The limitation of three years on judgment liens was suspended during the war.

APPEAL from *Desha* Circuit Court.

Hon. M. L. STEPHENSON, Circuit Judge.

*English* and *J. M. Clayton*, for appellant.

WILLIAMS, Sp. J. In this case the counsel of Randolph concludes his argument with this statement:

" The fact is, that the record in this case presents a series of errors and blunders from beginning to end; and it is respectfully submitted, that for the errors noticed and others apparent in the record, the judgment of the circuit court should be reversed."

We fully agree with the facts stated by the learned counsel, but dissent from his conclusions. This transcript is not creditable to the counsel engaged on either side; and the clerk who prepared it has violated all rules of this court and of chronological order in making it out. In one entry he will have Randolph *v.* Ward, Saunders & Hunt, in the next the title is reversed. In 1871, Hunt is reported dead; in 1872, we find him on the record, making motions. And those entries which

should precede the record entries of the final trial, and the order granting the appeal to this court, are put last in this ill arranged transcript. We discover, however, from this confused mass, that some one on the part of Saunders, at the conclusion of the case, by *nunc pro tunc* orders, has corrected serious mistakes, which seems to be regular; and indulging the usual presumptions which we do in favor of the court below, we find the blunders in the record, both of the probate court and of the circuit court, corrected.

We have been invited to go beyond the action of the circuit court and review the action of the probate court. As the code of practice, Civil Code, sec. 21, and amendment of 1871 to sec. 791, tit. XVI, ch. IV, requires a trial *de novo* in the circuit court, we shall not look beyond its action, except to find whether there was jurisdiction over the case and a proper appeal. That we find.

The bill of exceptions, so called, as presented to us in this confused transcript, states that a certain paper, or deposition, or other documentary evidence was read; and instead of inserting the paper as a part of the bill of exceptions at the point where it belongs, once for all, in the transcript, the clerk writes: "See page —," leaving us to guess both the paper and the matter he refers to, and also to go back or forward of this so called bill of exceptions, for the blank page of reference. As parties appealing to this court are expected to present their cases properly, we might feel disposed, were we inclined to visit the short comings of a clerk on either party, to impose the penalty upon him who asks relief at our hands, and require that he should present a case here in proper shape for hearing; and the slovenly, unlawyer-like manner of getting up the bill of exceptions and leaving loose papers unmarked and unidentified to be copied and referred to in this way, deserves a severe reprimand, and frequently repeated

Randolph, Adm'r, vs. Ward et al.

would necessitate an order, disobedience to which would be a total disregard of all such unidentified papers, and consequently of the bill of exceptions.

From this record, assisted by a very clear, concise and lucid statement of the finding of facts by the court below, which casts light upon and brings order out of this chaos, we are able to state the following as the substantial facts of the case:

That on the 27th of November, 1860, Ward, Saunders & Hunt recovered judgment in the Desha circuit court against George I. Graddy, for the sum of twelve thousand, three hundred and eighty-two 80-100 dollars debt, and eight hundred and fifty-three dollars damages. On the 3d day of January, 1861, a writ of execution was issued on this judgment and was levied by the sheriff of Desha county on certain personal property, and Graddy and certain sureties gave a delivery bond, in the usual form prevalent at that date, conditioned to deliver the property at the court house door of said county on the 27th day of May, 1861, and conditioned, upon breach, that said bond should have the force and effect of a judgment. The sheriff, on the 28th day of May, 1861, returned the bond, with the execution, forfeited, and the execution unsatisfied. Graddy died on the 14th day of May, 1864. Mary B. Graddy was appointed his administratrix by the probate court of Desha county, but the date of her letters is not proven. A certified transcript of the original judgment, execution, delivery bond and return of the sheriff, authenticated as a claim against the estate, by the affidavit of Hunt, as one of the surviving partners of Ward, Saunders & Hunt, on the 11th of May, 1866. This claim is marked, filed April 1, 1870, and was indorsed on 25th of April, 1871, as examined, allowed and classed in class 3, by the probate judge. On the 30th day of September, 1871, there was an order made, reciting that the

order made on 26th of April, 1871, classing the claim, had not been entered, and classed the claim in the name of Hunt, as surviving partner in said order, *nunc pro tunc.* It was the same judgment which had been so indorsed by the county judge on the 25th of April, 1871, which was evidently referred to in this *nunc pro tunc* order. The order classed it in the 3d class, as the indorsement of the judge had done, which indorsement was a direction to the clerk to enter the proper order on the record, and was a data by which the record entry could be afterwards corrected in favor of whoever might be the legal owner of the claim. We are not disposed to encourage any great degree of technicality in the mode of procedure in the probate court. The law intends it to be simple enough to be within the comprehension of any one of ordinary capacity. This indorsement of the claim by the probate judge was a data from which a correct entry could be taken at any time. Appellant, as administrator *de bonis non* of Graddy, appeared and excepted to the judgment of the court placing the claim in the 3d class, and appealed to the circuit court.

There was no bill of exceptions setting out the evidence in the probate court, as under the former law; and the circuit court proceeded to try the case *de novo*, without finding error. We think this was right, and such has been the practice in the circuit court, we are informed, ever since the passage of the amended section 791 of Civil Code in 1871, although there was some diversity before, owing to the obscurity of sec. 21, Civil Code, as to the practice on appeals.

The provisions of section 21, Civil Code, as amended in 1871, above referred to, changes the former practice on appeals from the probate court from that which prevailed under the provisions of Gould's Dig., ch. 4, secs. 197 to 203.

On appeal in the circuit court, Randolph, for the first time gives specific objections to the allowance of the claim. Among other grounds are these:

That no copy of the claim was rendered Mrs. Graddy when it was exhibited. This was matter in abatement, and was interposed too late, and not in proper manner before the circuit court; and where the administratrix waived notice, it was tantamount to a rejection of the claim, and a reference of the whole matter to the probate court, and where no copy is demanded, or the non-action or refusal to act is not placed expressly on that ground, at a time when it can be remedied, this court has never encouraged this objection. *Borden v. Fowler*, 14 Ark., 473; *Bellows v. Cheek*, 20 id., 424.

That no notice was given to Mrs. Graddy, or to Randolph, the administrator *de bonis non*, of the application to the probate court to class. The proof shows very clearly that the claim was presented to Mrs. Graddy, while she was administratrix, and within one year after the date of her letters, and was indorsed, notice waived, which referred to this notice, which may be waived, and was tantamount to a rejection of the claim, and a reference of it to the probate court. And the claim having been properly authenticated and exhibited, it was, under sec. 112 of ch. 4 of Gould's Dig., as much her duty to keep a list, allow, class and return a list of the claims exhibited to her, to the probate court, as it was the duty of the claimant, under sec. 113. *Clark v. Shelton*, 16 Ark., 474.

That more than two years had elapsed from the alleged presentation of said claim to Mrs. Graddy, before the claim was presented to the probate court. The exhibition of the claim properly authenticated, arrests the statute of nonclaim. The law does not limit the time of presentation to the probate court for classification. As both parties have the right to invoke the judgment of the court; one, under section 112; the other, under sec. 113 of ch. 4, Gould's Dig., there can be no hardship. At any rate, this court has decided the question in *McCoy v. Jackson Co.*, 21 Ark., 474, to the extent of holding

that when a claim is properly exhibited to the administrator, the claimant does not lose his right by failing to present it to the probate court.

All the objections interposed by Randolph are either proven to be untrue, or are frivolous, and not sustained by the law; unless it be the objection No. 4; that the claim was based upon a forfeited delivery bond, returned forfeited on the 28th of May, 1861; as to which we will speak presently.

After the claim was in the circuit court, the death of Hunt was suggested, in 1871, and a diminution of the record was suggested, and a certiorari ordered to the probate court; and there was, in that court, another order *nunc pro tunc*, correcting the one made on the 30th of September, 1871, which new order made the allowance in favor of Saunders, as surviving partner, in favor of Hunt. To this appellant excepted, and here objects, that the amended record of the probate court was not brought up to the circuit court, on return to the writ of certiorati. It is true, that no formal writ of certiorari is copied in the transcript. But the record states that the clerk of the probate court made the following return to the writ of certiorari. Then follows the amended probate court record. If we had visited rigid technical rules on appellant, we could have cut this investigation very short, but finding so many clerical shortcomings on either side, we have patiently examined, and given each of the parties the benefit of reasonable intendments, and we find nothing in this objection.

The only remaining point in the case strikes at the very foundation of the classification. The appellant insists that as the delivery bond could not have been forfeited until the 27th of May, 1861, at which period there was no sheriff and no court authorized to receive or sell the property or administer the law, and that the declarations of law by the court that tried the case *de novo* as a jury, given and refused, hold-

ing that this delivery bond became a statutory judgment on its forfeiture, which was or could have been a lien on real estate, and should therefore be classed in class three, was erroneous, and cites *Penn v. Tollison*, 26 Ark., 545; and *Thompson v. Mankin*, id., 586. If it becomes necessary to choose between these rulings of this court and those of the supreme court of the United States, which are directly in their teeth, we should feel inclined to follow those of the government whose sovereignty was defied by secession, and which might be regarded as the best exponents of the law. See *Horn v. Lockhart*, 17 Wall., 577.

But if we find the judgment right on the whole record, this error, if it be one, will not vitiate it. The original judgment was rendered in 1860, November 27, a complete transcript of which forms a part of the probated claim. The war commenced in less than six months afterward, and was continuing when Graddy died. This suspended the statute of limitation. *Metropolitan Bank v. Gordon*, 28 Ark., 115; *Denckla v. Lyon's Heirs*, id., 507; *The Protector*, 12 Wall., 700; *Brown v. Hyatt*, 15 id., 177; *Adgar v. Alston*, id., 555.

This suspension applied as well to the three years limitation on judgment liens as any other, so expressly held in the following case. *Bateville Institute v. Kaufman*, 18 Wall., 151.

In this last case our own judgment lien statute was held to be prolonged by the war. Were the question before us a new one, we should hesitate to decide that the war extended a right which was given only for a fixed period, and would be inclined to distinguish this from the case involving the statute of limitations. For the statute which makes judgments a lien, gives the right only for three years, while in case of statute of limitations a remedy is taken away upon a contingency, lapse of time. But as such decisions affect title, and as the right to the property involved in that case has been decided by this

rule, we think it better to have uniformity between the state and national tribunals on the same question; and while we claim the right, which is conceded, of construing our own laws, yet our convictions would have to be more positive, before we could change the ruling. Besides, this court, in *Graddy v. Eddins*, 28 Ark., 500, decided that the lien of the judgment was continued for three years exclusive of the period of the war.

The appellant objects to the judgment of the probate court, because, even if Mrs. Graddy did waive notice of the application and refer the whole matter to the probate court, which was the legal effect of the indorsement, yet as the matter was presented during his administration, he should have had notice. Suppose we should admit this. Yet in September, 1871, when the order classifying the claim was really entered, he was present, excepted and appealed.

In the circuit court, the judgment of the probate court was practically set aside, and appellant had a fair trial *de novo* on the merits; and the court correctly came to the same conclusion the probate court did, and rendered the same judgment.

We cannot see where he is prejudiced on the merits of his case. He has certainly had a full hearing upon the merits of his defense, and there is nothing in it.

Finding no error in the record, the judgment of the circuit court of Desha county in this case is affirmed.

Hon. E. H. ENGLISH did not sit in this case.